UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVSIION

| | | |
|---|---|---|
| TARA B. BLANTON, | ) | CASE NO. 3:15-cv-1864 |
| | ) | |
| Plaintiff, | ) | JUDGE JAMES G. CARR |
| | ) | |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| ACTING COMMISSIONER OF | ) | THOMAS M. PARKER |
| SOCIAL SECURITY, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendant. | ) | |
| | ) | |

## I.      Introduction

Plaintiff, Tara R. Blanton ("Blanton"), seeks judicial review of the final decision of the

Commissioner of Social Security denying her application for Supplemental Security Income

benefits and Disability Insurance Benefits under Title XVI of the Social Security Act ("Act").

This matter is before the court pursuant to 42 U.S.C. §405(g), 42 U.S.C. §1383(c)(3) and Local

Rule 72.2(b).

For the reasons set forth below, it is recommended that the final decision of the

Commissioner be VACATED and REMANDED for further proceedings consistent with this

Report and Recommendation.

## II.      Procedural History

Plaintiff applied for supplemental security income and disability insurance benefits in

2012.  (Tr. 134-139)  Ms. Blanton alleged her disability began on June 4, 2012. (Tr. 134)  Ms.

Blanton's application was denied initially on September 4, 2012 (Tr. 84-86) and after

reconsideration on November 28, 2012.  (Tr.90-91)  On January 7, 2013, Ms. Blanton requested an administrative hearing.  (Tr.92-94)

A hearing was held before the Administrative Law Judge ("ALJ"), Thomas L. Wang, on January 29, 2014.  (Tr. 32)  The ALJ issued a decision on April 23, 2014, finding that Blanton was not disabled.  (Tr. 6-29)  Blanton requested a review of the hearing decision on May 12, 2014. (Tr. 30-31)  The Appeals Council denied review, rendering the ALJ's January 29, 2014 decision final. (Tr. 1-5)

On September 11, 2015, Ms. Blanton filed an appeal of the ALJ's final decision with this court. (Doc. 3)  Defendant answered and filed the transcript of the administrative proceedings on November 16, 2015. (Docs. 9 and 10)  Blanton filed her brief on the merits on December 21, 2015 (Doc. 12) and Defendant filed her brief on the merits on March 21, 2016 (Doc. 15), making the matter ripe for this court's review.   Plaintiff filed a reply memorandum on April 1, 2016. (Doc. 16)

## III.   Evidence
### A.  Personal, Educational and Vocational Evidence

Ms. Blanton was born on November 11, 1975 and was 36 years old on the date her application was filed.  (Tr. 134)  She is divorced and does not have any children.  (Tr. 38)  Ms. Blanton has at least a high school education.  (Tr. 21)  She previously worked as a home health aide.  (Tr. 21)

2

**B.  Medical Evidence - Physical**

Plaintiff began treating with Dr. Parminder Singh as early as March 15, 2010.[1]  (Tr. 291)  Dr. Singh's notes indicate that plaintiff was following-up after an emergency room visit related to a motor vehicle accident in which she had been involved.  (Tr. 291)  Dr. Singh's notes state that Ms. Blanton suffered from multiple impairments such as migraines, chronic pain, stress, and depression.  (Tr. 266)  Plaintiff also complained of knee pain and lower back pain.  (Tr. 286, 376)  Dr. Singh treated plaintiff for these complaints.  (Tr. Tr. 260-287)

In 2011, plaintiff reported to the emergency room with acute bronchitis and was discharged to home/self-care in stable condition. (Tr. 221)  In January 2012, she went to the emergency room complaining of migraine headache.  (Tr. 225)  She was released the same day after her symptoms improved.  (Tr. 225)  Plaintiff underwent a hysterectomy in February 2012. (Tr. 243)

**C.  Medical Evidence – Mental Health**

Plaintiff began treating with Dr. Bipin Desai, M.D., a psychiatrist, in January 2012.  (Tr. 253-254)  On January 12, 2012, Dr. Desai diagnosed major depressive disorder, recurrent, moderate.  (Tr. 253)  Plaintiff treated with Dr. Desai approximately once per month.  (Tr. 253-258)  He observed her facial expressions and general demeanor and noted she was depressed. (Tr. 253-258)  At her initial appointment he noted that she appeared to be near tears.  (Tr. 253)  He also reported that her speech and thinking were slowed by depressed mood.  (Tr. 258)

On June 18, 2102, Dr. Desai added a second Axis I diagnosis: "Pain Disorder Associated with Psychological Factors and a Medical Condition, 307.89 (Active)."  (Tr. 258)

---

[1]Although plaintiff's brief states that she began treating with Dr. Singh as early as 2010, the transcript contains medical records from Dr. Singh from much earlier.  (Tr. 304)

On July 16, 2012 Dr. Desai added a prescription for Abilify, 2 mg, 1 qam, and discontinued plaintiff's Risperdal prescription.  (Tr. 377)  On August 13, 2012 Dr. Desai increased the daily dosage of Abilify to 5mg 1 qam.  (Tr. 378)  On September 24, 2012, Dr. Desai discontinued plaintiff's prescription for Prozac and added a prescription for Pristiq, 50 mg, 1 qam.  (Tr. 381)  On October 22, 2012, Dr. Desai stopped the prescription for Pristiq and replaced it with a prescription for Cymbalta, 60 mg. 1 qhs.  (Tr. 382-83)  On December 24, 2102, Dr. Desai started a prescription for Lexapro, 10 mg. 1 qam.  (Tr. 412)  On December 20, 2012, there is evidence of record that Dr. Desai prescribed another psychotropic medication, Celexa, at 20 mg. 1 qam. (Tr. 414)

Plaintiff participated in a partial hospitalized program for what she describes as a "mental breakdown" in December 2012.  A discharge summary from this course of treatment states that plaintiff attended 17 days of the partial hospitalization program ("PHP").  (Tr. 387)  The discharge notes also state that plaintiff had an improved mood, increased activity level and motivation and that her symptoms were reduced with improved overall functioning.  (Tr. 387)  After participating in this program, plaintiff reported "feeling pretty good" at her appointments with Dr. Desai.  His notes following the PHP report general improvement and a GAF of 55.  (Tr. 415-420)  However, Dr. Desai's two Axis I diagnoses never changed.

### D.  Opinion Evidence

#### 1.    Treating Physician – Parminder B. Singh, M.D. – June 2013

Dr. Singh completed a Physical Capacity Evaluation form on June 20, 2013. (Tr. 399-400)  Dr. Singh opined that, in an eight hour workday, plaintiff could stand one hour total and 15 minutes at a time; walk one hour total and 10 minutes at a time; and sit for two hours total and for 10 minutes at a time.  (Tr. 399)  He opined that she could lift up to 10 pounds rarely; grasp

4

and perform fine manipulation, but could not push or pull; could occasionally bend and climb steps, but could not crawl or climb ladders; could reach above shoulder level, but not consistently.  (Tr. 399-400)  Dr. Singh also indicated that he felt that claimant's condition was likely to deteriorate if she were placed under stress and that she was likely to have five or more absences per month due to her diagnosed conditions, pain and/or side effects of medication. (Tr. 400)  Dr. Singh's opinion also states that plaintiff "falls apart" when under stress.  (Tr. 400)  He reported that her inability to deal with stress leads to both physical and mental health symptoms, such as muscle spasms, headaches, an inability to concentrate on basic tasks and severe depression.  (Tr. 400)

### 2.   Treating Psychiatrist, Bipin M. Desai, M.D.

Dr. Desai completed a questionnaire as to plaintiff's mental residual functional capacity on August 29, 2013.  (Tr. 402-404)  Dr. Desai opined that plaintiff had a marked limitation in numerous areas including: responding appropriately to coworkers and the general public, completing normal work tasks, performing at production levels expected by most employers, maintaining attention and concentration, and tolerating customary work pressures.  (Tr. 402-403) Dr. Desai opined that plaintiff would have a moderate limitation in the ability to work in coordination with or proximity to others without distracting them, being distracted by them, or exhibiting behavioral extremes; be aware of normal hazards and take necessary precautions; and in maintaining personal appearance and hygiene.  (Tr. 403)  Dr. Desai opined that plaintiff would likely miss five or more days of work per month due to her condition and that her condition would likely deteriorate if placed under the stress of full-time employment.  (Tr. 404)

### 3.   Reviewing Physicians

#### a.   Dr. Leigh Thomas, M.D., - August 2012

Dr. Leigh Thomas, M.D., a state-agency doctor, reviewed the record on August 21, 2012 and opined that plaintiff could perform the full range of light work, specifically finding that she could lift and/or carry 20 pounds occasionally, and 10 pounds frequently, stand and/or walk for about 6 hours in an 8 hour workday, and sit for about 6 hours in an 8 hour workday.  (Tr. 63-64)

#### b.   Dr. Sreenivas Venkatachala, M.D. – November 2012

On November 28, 2012, Dr. Sreenivas Venkatachala, M.D., a state-agency doctor, reviewed the record and affirmed Dr. Thomas's opinion.  (Tr.76-77)

#### c.   Dr. Mel Zwissler, Ph.D., - August 2012

Dr. Mel Zwissler, Ph.D., a state-agency psychologist, reviewed the record evidence on August 27, 2012.  Dr. Zwissler opined that plaintiff was only partially credible.  (Tr. 63)  He found that she had no significant limitation in her ability to perform work involving short and simple instructions, sustain an ordinary routine without special supervision, make simple work-related decisions, complete a normal workday and workweek, interact with supervisors, and maintain socially appropriate behavior among others.  (Tr. 65-66)  Dr. Zwissler found plaintiff to have a moderate limitation in her ability to perform work involving detailed instructions, maintain concentration for extended periods, work closely with others without being distracted by them, and interact with the public.  (Tr. 65)

#### d.   Dr. Robyn Hoffman, Ph.D. – November 2012

On November 27, 2012, Dr. Robyn Hoffman, Ph.D., a state-agency psychologist reviewed the record and affirmed Dr. Zwissler's opinion.  (Tr. 77-79)

### E.  Testimonial Evidence

#### 1.  Plaintiff's Testimony

A hearing took place in this matter on January 29, 2014.  (Tr. 32)  Ms. Blanton was represented by counsel at the hearing.  (Tr. 34)  Ms. Blanton stated that she became disabled on June 3, 2012 because that is when her fibromyalgia kicked in and made her depression worse. (Tr. 36)  Blanton stated she was not working at the time of the onset date and had stopped working due to her fibromyalgia.  (Tr. 36-37)  She sees Dr. Singh every two months for her fibromyalgia, asthma and migraines. (Tr. 37)  Dr. Singh referred Ms. Blanton to Dr. Desai for depression.  (Tr. 37)  Ms. Blanton stated that Dr. Desai prescribed medications for her depression that helped to "take the edge off." (Tr. 37)  She also stated that Dr. Singh prescribed medications for her fibromyalgia which also helped to "take the edge off."  (Tr. 37)

Ms. Blanton testified that she does not belong to any organizations such as a church and she does not have any hobbies.  (Tr. 37-38)  She occasionally watches television and checks her Facebook account.  (Tr. 38)   She stated that she has a dog and a cat but that her mother takes care of the animals.  Ms. Blanton testified that she is divorced and does not have any children. (Tr. 38)

She testified that depression and fibromyalgia prevent her from working. (Tr. 38)  She stated that her fibromyalgia "feels like there's a bunch of pins and needles sticking me, like electric shock."  (Tr. 39)  She also stated that the fibromyalgia prevents her from taking care of patients as she did in her former employment. (Tr. 39)  Additionally, Ms. Blanton stated that her conditions of asthma, migraine headaches, and severe arthritis in her knee also prevent her from working. (Tr. 39)

When questioned by her attorney, Ms. Blanton stated that she previously had worked as a state tested nurse assistant but that she had let her certification lapse prior to 1999. (Tr. 39-40)

7

Since that time, Ms. Blanton stated that her main job was in home health care which involved taking care of patients in their home and bathing, lifting, shopping and cleaning for them.  (Tr. 40)  She further testified that she had also been an assistant general manager at an assisted living facility.  (Tr. 40-41)  Ms. Blanton would  fill in if someone were to call off work and she would help care for the patients which included helping them get dressed, bathe and eat. (Tr. 41)  Over the past 15 years, Ms. Blanton has only done home health care work. (Tr. 42)

Ms. Blanton stated that the medications she is taking make her feel tired, foggy and that she has trouble focusing and concentrating.  (Tr. 42)  She said that Xanax makes her feel tired and foggy and that Neurontin also makes her tired and unable to concentrate.  (Tr. 42)  She testified that when she gets a headache, she has to go in a dark room and shut off the lights and avoid all sounds. (Tr. 43)  These headaches can take six to eight hours or more until they go away.  (Tr. 43)

Ms. Blanton stated that on a typical day, she watches television.  She will also walk for about an hour a day to ease the fibromyalgia pain. (Tr. 43)  She also stated that she sits about an hour and a half each day.  (Tr. 43)  Ms. Blanton testified that her fibromyalgia pain is all over her body.  (Tr. 44)  She has not seen a specialist for the fibromyalgia because she was dropped by her insurance.  (Tr. 44)

Ms. Blanton went to a partial hospitalization program at Marion General Hospital that teaches coping skills for dealing with depression and fibromyalgia.  (Tr. 44)

Ms. Blanton testified that when she experiences anxiety, she feels nervous, jittery, fidgety and unable to focus or concentrate.  (Tr. 45)   When she experiences these symptoms, she will take Xanax.  (Tr. 45)   Ms. Blanton does not read because she cannot concentrate. (Tr. 45)

Ms. Blanton testified that she does not always get dressed or get out of bed each day because her body hurts, she feels depressed and has very poor energy. (Tr. 46)  She stated that she could not work eight hours a day, five days a week because of pain and an inability to concentrate and focus.  (Tr. 47)  Ms. Blanton said that she missed three to four times a week at her last position due to pain from fibromyalgia and depression. (Tr. 47)  She also stated that she cannot sit or stand for a very long time. (Tr. 48)

### 2.    Vocational Expert's Testimony

Vocational Expert ("VE"), Jerry A. Olsheski, testified at the hearing.  (Tr. 48-56)  For the first hypothetical question, the VE was instructed to consider a hypothetical individual with the same age, education and past jobs as Ms. Blanton and to further assume that the individual is restricted to light work with the following limitations: foot control operation with right foot is limited to frequent level; climbing ladders, ropes and scaffolds and kneeling and crawling are limited to frequent level; work is limited to simple, routine, repetitive tasks; work is allowed to be off task five percent of the day, work in a low stress job, defined as only occasional changes in the work setting; goal-based production, where work is measured by end result, not paced work; and interaction with the public, coworkers and supervisors is occasional.  (Tr. 50)

The ALJ asked the VE if this hypothetical individual could perform any of the past jobs of Ms. Blanton.  (Tr. 51)  The VE said there would not be any past jobs available; however, the hypothetical individual could perform some light, unskilled jobs such as a hand packer, with 800 jobs available in the local market and 275,000 nationally; a cleaner, with 1,500 available in the local market and 500,000 nationally; and a packing and filling machine operator with 300 jobs available locally and 150,000 nationally. (Tr. 51)

For the second hypothetical, the VE was asked whether the same hypothetical individual with the exertional level changed to sedentary, could perform any of the past work of Ms.

9

Blanton. (Tr. 51)  The VE opined that the hypothetical individual could not perform any of the past jobs of Ms. Blanton, but such an individual could perform the position of assembler with 300 in local market and 160,000 available nationally; an inspector with 100 available locally and 75,000 available nationally; and a hand packer with 100 local jobs and 50,000 nationally.  (Tr. 51-52)

For the third hypothetical, the ALJ changed hypothetical number one and added a sit/stand option.  With that change, the VE stated that there would not be any jobs available in the light category.  (Tr.  52)

For the fourth hypothetical, the ALJ changed hypothetical number two to include a sit/stand option.  The VE testified that the jobs he stated would be reduced by at least 50 percent. (Tr.  52)

For the fifth hypothetical, the ALJ asked the VE if his answers would change if the ALJ were to revise the hypothetical individuals numbered one, two and four to allow them to be off task for 10 percent of the time or even 15 percent of the time.  (Tr.  53)  The VE stated anything over 10 percent of the time would preclude those positions.  (Tr. 53)

Next, the ALJ asked the VE if any of his hypothetical answers would change if the individual could only stand 15 minutes at a time, walk for only 10 minutes at a time, and sit for only 10 minutes at a time.  (Tr.  53)  The VE stated he would rule out all light work jobs previously stated and reduce the sedentary jobs by 50 percent.  (Tr.  53-54)

The ALJ asked the VE if the following options would make work preclusive in an eight hour day:  stand one hour, walk one hour, and sit for two hours.  (Tr. 54)  The VE confirmed that those factors would make work preclusive for the hypothetical individual. (Tr. 54)  The ALJ went on to ask whether unscheduled absences occurring five or more days per month would

make such work preclusive.  (Tr.  54)  The VE agreed with that it would preclude such work.

(Tr.  54)  Next, the ALJ asked if the hypothetical individual needed frequent supervision because

of not being able to concentrate and/or needed redirection whether that would make such work

preclusive.  (Tr. 54)  Concerning unskilled work, the VE stated that if such an individual needed

a supervisor more than two or three times an hour, that person would probably be terminated.

(Tr. 54)  When asked, the VE stated that taking four 15-minute breaks in addition to regular

breaks would require employer accommodation. (Tr.  55)

Ms. Blanton's attorney then asked the VE whether the hypotheticals discussed with light,

sedentary and then sedentary with sit/stand options were presumed to have the ability to maintain

concentration and attention and be punctual and persistent with tasks given.  (Tr.  55)  The VE

confirmed that these qualities were presumed. (Tr.  55)

When questioned, the VE also agreed with Ms. Blanton's attorney that if the limitations

opined by Dr. Desai were assumed, work would be preclusive for such hypothetical individuals.

(Tr.  55)

## IV.  Standard for Disability

Under the Act, 42 U.S.C. § 423(a), eligibility for benefit payments depends on the

existence of a disability. "Disability" is defined as the "inability to engage in any substantial

gainful activity by reason of any medically determinable physical or mental impairment which

can be expected to result in death or which has lasted or can be expected to last for a continuous

period of not less than 12 months." 42 U.S.C. § 423(d)(1)(a). Furthermore:

> [A]n individual shall be determined to be under a disability only if his physical or
> mental impairment or impairments are of such severity that he is not only unable
> to do his previous work but cannot, considering his age, education, and work

11

experience, engage in any other kind of substantial gainful work which exists in the national economy[2]....

42 U.S.C. § 423(d)(2)(A).

In making a determination as to disability under this definition, an ALJ is required to follow a five-step sequential analysis set out in agency regulations. The five steps can be summarized as follows:

1. If the claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity, is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment,13 claimant is presumed disabled without further inquiry.

4. If the impairment does not meet or equal a listed impairment, the ALJ must assess the claimant's residual functional capacity and use it to determine if claimant's impairment prevents him from doing past relevant work. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. If claimant is unable to perform past relevant work, he is not disabled if, based on his vocational factors and residual functional capacity, he is capable of performing other work that exists in significant numbers in the national economy.

20 C.R.F. §§ 404.1520, 416.920; *Bowen v. Yuckert,* 482 U.S. 137, 140-142 (1987).

Under this sequential analysis, the claimant has the burden of proof at Steps One through Four. *Walters v. Comm'r of Soc. Sec.* 127 F.3d 525, 529 (6th Cir. 1997).  The burden shifts to the Commissioner at Step Five to produce evidence that establishes whether the claimant has the RFC and vocational factors to perform work available in the national economy. *Id.*

_____

[2] "'[W]ork which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 423 (d)(2)(A).

**V.      The ALJ's Decision**

The ALJ issued a decision on April 23, 2014.  A summary of his findings is as follows:

1. Blanton meets the insured status requirements of the Social Security Act through June 30, 2012.

2. Blanton has not engaged in substantial gainful activity since June 4, 2012, the alleged onset date.  (Tr. 11)

3. Blanton has the following severe impairments: mild osteoarthritis of the right knee; degenerative disc disease of the lumbosacral spine; obesity; an anxiety disorder, not otherwise specified; and a depressive disorder no other specified. (Tr. 11)

4. Blanton does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.  (Tr. 14)

5. Blanton has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), with the exception that she can frequently use her right lower extremity for pushing and pulling of leg controls and that she can frequently kneel, crawl, and climb ladders, ropes and scaffolding.  The claimant further retains the capacity for low stress work, defined in the claimant's case as simple, routine, and repetitive tasks involving goal-based production that is measured by end result versus pace of work; involves only occasional changes in work setting; involves only occasional interaction with supervisors, coworkers, and the public; and allows for five percent of the work day to be spent off task.  This residual functional capacity is consistent with and well supported by the record as a whole. (Tr. 17-18)

6. Blanton is unable to perform any past relevant work.  (Tr. 21)

7. Blanton was born on November 11, 1975 and was 36 years old, which is defined as a younger individual age 18-49 on the alleged disability onset date. (Tr. 21)

8. Blanton has at least a high school education and is able to communicate in English.  (Tr. 21)

9.  Transferability of job skills is not material to the determination of disability
    because using the Medical-Vocational Rules as a framework supports a
    finding that the claimant is not disabled whether or not the claimant has
    transferable job skills. (Tr. 21)

10.  Considering Ms. Blanton's age, education, work experience, and residual
     functional capacity, there are jobs that exist in significant numbers in the
     national economy that she can perform.  (Tr. 21)

Based on the foregoing, the ALJ determined that Blanton had not been under a disability
from June 4, 2012 through April 23, 2014 (the date of the ALJ's decision).  (Tr. 23)

## VI.  Parties' Arguments

Plaintiff filed her brief on the merits on December 21, 2015.  (Doc. 12)  Plaintiff argues
that the ALJ committed legal error by failing to include material medical evidence in the record.
(Doc. 12, pp. 6-10)  The ALJ did not include 68 pages of medical records as part of the claim.
Plaintiff does not know why the ALJ failed to include these pages as part of plaintiff's claim and
argues that the omissions of these records led the ALJ to discredit plaintiff's credibility.  For
example, in his decision the ALJ states that plaintiff had never been recommended to undergo
treatment with a rheumatologist, neurologist, or other specialist and had never participated in
physical therapy.  However, plaintiff points out that the omitted records include reports of
plaintiff going to a pain management consultant, to a chiropractor, and that she had tried physical
therapy, which did not help.  (Doc. 12, p. 4)  Plaintiff also argues that the ALJ improperly found
that Dr. Singh's opinion was not supported by objective evidence, when the omitted records
contained objective evidence supporting Dr. Singh's opinion.  (Doc. 12, p. 11-13)  Plaintiff also
contends that the ALJ failed to articulate good reasons for rejecting the opinions of Dr. Desai and
Dr. Singh.  (Doc. 12, pp. 13-19)

14

Defendant filed her brief on the merits on March 21, 2016. (Doc. 15) Defendant contends that plaintiff's counsel consented to the omission of medical records at the outset of the hearing when plaintiff's counsel indicated that he had no objections to the documents marked for admission in this case. Defendant next argues that the ALJ reasonably excluded certain evidence from the record because it substantially predated the plaintiff's alleged onset date. (Doc. 15, p. 7) Alternatively, defendant argues that, even if the omission is considered an error, it was harmless because the evidence would not help the plaintiff's case. Finally, defendant argues that the ALJ reasonably discounted the opinions of Dr. Desai and Dr. Singh.

Plaintiff filed a reply brief on April 1, 2016. (Doc. 16) Plaintiff argues that it is irrelevant that her attorney failed to object to the omission of certain medical records at the outset of the hearing. She also argues that the ALJ was required to consider the evidence regardless of how old it was. She argues that it was not harmless error for the ALJ to omit certain records and restates her argument that the ALJ failed to provide good reasons for rejecting the opinions of plaintiff's treating sources.

## VII. Law & Analysis

### A. Standard of Review

This court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.,* 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker,* 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence has been defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant

15

evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health and Human Servs.,* 25 F.3d 284, 286 (6th Cir. 1994).

The Act provides that "the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. §§ 405(g) and 1383(c)(3). The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion.  *Buxton v. Halter,* 246 F.3d 762, 772-3 (6th Cir. 2001) (*citing Mullen v. Bowen,* 800 F.2d 535,545 (6th Cir. 1986); *see also Her v. Comm'r of Soc. Sec.,* 203 F.3d 288, 389-90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached."  *See Key v. Callahan,* 109 F.3d 270, 273 (6th Cir. 1997).  This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.  *Mullen,* 800 F.2d at 545 (*citing Baker v. Heckler,* 730 F.2d 1147, 1150 (8th Cir. 1984).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal.  *See e.g. White v. Comm'r of Soc. Sec.* 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.")

16

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result."  *Fleischer v. Astrue,* 774 F.Supp.2d 875, 877 (N.D. Ohio 2011) (*quoting Sarchet v. Chater,* 78 F.3d 305, 307 (7th Cir. 1996); *accord Shrader v. Astrue,* No. 11-13000, 2012 U.S. Dist. LEXIS 157595 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue,* No. 1:10-cv-734, 2011 U.S. Dist. LEXIS 141342 (S.D. Ohio Nov. 15, 2011); *Gilliams v. Astrue,* No. 2:10-CV-017, 2010 U.S. Dist. LEXIS 72346 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, No. 1:09-cv-19822010, 2010 U.S. Dist. LEXIS 75321 (N.D. Ohio July 9, 2010).

### B.  Failing to Include Medical Evidence in the Record

Plaintiff argues that the ALJ erred by failing to include certain medical records as exhibits to the record.  Plaintiff argues that the ALJ was required to consider this evidence and the fact that he did not include it as an exhibit requires a reversal and remand of his decision.

There is no evidence that the ALJ intentionally failed to include these medical records as an exhibit to plaintiff's record.  Nonetheless, the omission of these records did lead to some inaccuracies in the ALJ's decision.  As pointed out by plaintiff, the ALJ incorrectly noted that the plaintiff had never been offered any treatment other than solely conservative treatment for her pain, and that she had never participated in physical therapy or other alternative treatment for her pain complaints.  However, the omitted records contain references to her going to a chiropractor and to physical therapy.  (Doc. 12, p. 27)  While the inclusion of the omitted records would not necessarily have changed the ALJ's ultimate decision, his analysis certainly could have been different if the omitted records had been reviewed and exhibited in the record.

17

20 C.F.R. § 404.1520(a)(3) provides that the Commissioner will consider all evidence in the case record when making a determination or decision whether an individual is disabled. 20 C.F.R. § 404.1512 (b) defines evidence as "anything you or anyone else submits to us or that we obtain that relates to your claim."  Evidence includes, but is not limited to:

> (i) Objective medical evidence, that is, medical signs and laboratory findings as defined in § 404.1528(b) and (c);

> (ii) Other evidence from medical sources, such as medical history, opinions, and statements about treatment you have received;

> * * *

Thus, it appears that it was an error for the ALJ to omit some of the plaintiff's medical records as exhibits and that these records should have been considered as part of the evidence of plaintiff's disability.  The court should remand the case to permit a reevaluation of the evidence to be made in light of the additional records.  The court should also find unpersuasive defendant's argument that plaintiff waived the right to have these records considered.

Defendant argues that the court should find that the ALJ's omission of the medical records was harmless error.  However, neither of the parties has cited any legal authority that directly relates to whether or not the omission of evidence from the record considered by the ALJ can be considered "harmless error" by the reviewing court.  Because the court finds that the ALJ did not follow the treating physician rule, as is further explained below, it is not necessary for the court to determine whether the ALJ's error to include all the evidence in the record was harmless.  If this case is remanded, the omitted records should be considered.

## C.  Treating Physician Rule

Plaintiff argues that the ALJ did not articulate good reasons for failing to assign controlling weight to the opinion of plaintiff's treating physicians.  The administrative

regulations implementing the Social Security Act impose standards on the weighing of medical source evidence. *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011).  In making determinations of disability, an ALJ evaluates the opinions of medical sources in accordance with the nature of the work performed by the source. *Gayheart v. Comm'r of Soc. Sec.,* 710 F.3d 365, 375 (6th Cir. 2013).  The treating physician rule requires that "[a]n ALJ [] give the opinion of a treating source controlling weight if he finds the opinion well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence in [the] case record." *Wilson v. Comm'r of Soc. Sec*., 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.F.R. § 404.1527(c)(2)) (internal quotation marks omitted).

If the ALJ does not give the opinion controlling weight, then the opinion is still entitled to significant deference or weight that takes into account the length of the treatment and frequency of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record as a whole, and whether the treating physician is a specialist. 20 C.F.R. § 416.927(c)(2)(6).  The ALJ is not required to explain how he considered each of these factors but must provide "good reasons" for discounting a treating physician's opinion. 20 C.F.R. § 416.927(c)(2); see also *Cole*, 661 F.3d at 938 ("In addition to balancing the factors to determine what weight to give a treating source opinion denied controlling weight, the agency specifically requires the ALJ to give good reasons for the weight actually assigned."). "These reasons must be supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Gayheart*, 710 F.3d at 376 (quoting Soc. Sec. Rul. No. 96-2p, 1996 SSR LEXIS 9, *12, 1996 WL 374188, at *5 (July 2, 1996)) (internal quotation marks omitted).

A failure to follow these procedural requirements "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based on the record." *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 243 (6th Cir. 2007).  The Sixth Circuit Court of Appeals "do[es] not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion and [it] will continue remanding when [it] encounter[s] opinions from ALJ's that do not comprehensively set forth reasons for the weight assigned." *Cole*, 661 F.3d at 939 (quoting *Hensley v. Astrue*, 573 F.3d 263, 267 (6th Cir. 2009)) (alteration in original) (internal quotation marks omitted).

The ALJ's "good reasons" must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Gayheart*, 710 F.3d at 376 (quoting Soc. Sec. Rul. No. 96-2p, 1996 SSR LEXIS 9, *12, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996)).  As the Sixth Circuit has noted,

> [T]he conflicting substantial evidence must consist of more than the medical opinions of the nontreating and nonexamining doctors. Otherwise the treating-physician rule would have no practical force because the treating source's opinion would have controlling weight only when the other sources agreed with that opinion. Such a rule would turn on its head the regulation's presumption of giving greater weight to treating sources because the weight of such sources would hinge on their consistency with nontreating, nonexamining sources.

*Id*. at 377.

Regarding Dr. Singh's opinion, the ALJ stated:

> The June 20, 2013 opinions of Dr. Singh have been considered but cannot be assigned any significant weight because Dr. Singh's own report fails to substantiate the type of significant clinical and laboratory abnormalities that one would expect if the claimant were in fact disabled, and Dr. Singh does not specifically address this weakness in his opinion.  In this regard, it appears that Dr. Singh heavily relied on the subjective reports of symptoms and limitations provided by the claimant, and that he uncritically accepted as true most, if not all,

of what the claimant reported.  Yet, as explained elsewhere in this decision, there exists good reasons for questioning the reliability of the claimant's subjective complaints.

(Tr. 20)  The ALJ does not assign any significant weight to Dr. Singh's opinion because it is not based on any significant clinical and laboratory abnormalities.  However, some of the plaintiff's impairments such as her anxiety and depression, which are consistently documented in Dr. Singh's notes, would not necessarily be expected to be supported by clinical and laboratory abnormalities.

> [A] psychiatric impairment is not as readily amenable to substantiation by objective laboratory testing as a medical impairment . . . consequently, the diagnostic techniques employed in the field of psychiatry may be somewhat less tangible than those in the field of medicine . . . . In general, mental disorders cannot be ascertained and verified as are most physical illnesses, for the mind cannot be probed by mechanical devices in order to obtain objective clinical manifestations of medical illness . . . . [W]hen mental illness is the basis of a disability claim, clinical and laboratory data may consist of the diagnosis and observations of professionals trained in the field of psychopathology. The report of a psychiatrist should not be rejected simply because of the relative imprecision of the psychiatric methodology or the absence of substantial documentation, unless there are other reasons to question the diagnostic techniques.

*Brooks v. Comm'r of Soc. Sec.,* 531 Fed. App'x. 636, 643-644 (6th Cir. Ky. 2013); *Blankenship v. Bowen*, 874 F.2d 1116, 1121 (6th Cir. 1989) (quoting *Poulin v. Bowen*, 817 F.2d 865, 873-74, 260 U.S. App. D.C. 142 (D.C. Cir. 1987)).

Dr. Singh's notes also consistently document plaintiff's pain or "myalgias," which would also not necessarily be supported by clinical and laboratory findings.  The Sixth Circuit Court of Appeals has repeatedly recognized that fibromyalgia can be a severe and disabling impairment. *Rogers v. Comm'r of Social Sec.*, 486 F.3d 234, 243 (6th Cir. 2007) (citing *Preston v. Sec'y of Health & Human Servs.,* 854 F.2d 815, 820 (6th Cir. 1988) (per curiam)); see also *Kalmbach v. Comm'r of Soc. Sec.*, 409 F. App'x 852, 859-60 (6th Cir. 2011); *Germany-Johnson v. Comm'r of Soc. Sec.,* 313 F. App'x 771, 778 (6th Cir. 2008) (per curiam). "[U]nlike medical conditions that

21

can be confirmed by objective testing, fibromyalgia patients present no objectively alarming signs." *Rogers,* 486 F.3d at 243.  They demonstrate normal muscle strength and neurological reactions and can have a full range of motion.  *See id.*

In rejecting Dr. Singh's opinion, the ALJ does not articulate specific good reasons.  The ALJ did not discuss the length of the treatment and frequency of the treatment relationship between Dr. Singh and plaintiff, or the consistency of the opinion with the record as a whole.  The ALJ does not address the fact that Dr. Singh had a long, on-going relationship with plaintiff.  Nor does the ALJ point to any specific facts in the record which contradict the opinion of Dr. Singh.  He summarily concludes that Dr. Singh's opinion was based on plaintiff's subjective reports.  The ALJ then indicates that there were good reasons for questioning plaintiff's credibility, but the ALJ's own analysis of plaintiff's credibility was incomplete and potentially inaccurate as a result of his failure to include some of the submitted medical records as exhibits.

Regarding Dr. Desai's opinion, the ALJ stated,

The August 29, 2013 opinion of Dr. Desai has been considered but cannot be assigned any significant weight because his opinion is inconsistent with and unsubstantiated by his own reported clinical examination findings.  In fact, at ever [sic] examination of the claimant, she was classified by Dr. Desai as having only "moderate" depression and a "moderate" major depressive disorder, which is inconsistent with Dr. Desai's August 29, 2013 mental residual functional capacity assessment.  Moreover, all GAF ratings assigned to the claimant have fallen within the range of only moderate, and not severe as would be expected based on the limitations set forth in Dr. Desai's August 29, 2013 opinion.

The ALJ also suggests that Dr. Desai may have provided his opinion at the insistence of the plaintiff and because he was influenced by sympathy for her.

As pointed out by plaintiff, Dr. Desai was not hired by Social Security and there is no assumption that he is familiar with the definitions used by Social Security or how the agency defines "moderate." See 20 C.F.R. § 404.1527(e)(2)(i).  Thus, the fact that Dr. Desai's notes

describe plaintiff's depression as "moderate" does not necessarily contradict his opinion as to the limitations stated in his August 29, 2013 opinion, most of which indicated "marked" limitations in various spheres.  Dr. Desai diagnosed plaintiff with two Axis I conditions, Major Depressive Disorder and Pain Disorder Associated With Psychological Factors and a Medical Condition. The ALJ does not address both of these conditions in his decision but instead focuses on the fact that plaintiff's depression was stated as "moderate" in Dr. Desai's notes.  He never seems to have considered whether the treatment notes and the evaluation report could be reconciled.

In rejecting the opinion of Dr. Desai, the ALJ does not appear to take into account the length of the treatment and frequency of the treatment relationship or the consistency of the opinion with the record as a whole.  The ALJ rejects the decision because of Dr. Desai's use of the word "moderate" in his notes, the reported GAF scale from individual appointments, and because he assumes that Dr. Desai may have felt sympathy or have been pressured by the plaintiff to provide the opinion.  However, there is no support in the record for the ALJ's assumption that Dr. Desai's opinion may have been influenced by sympathy.  Moreover, as explained above, the ALJ's own evaluation of plaintiff's credibility contains inaccuracies due to the omission of certain medical records.  For these reasons, the court should find that the ALJ did not articulate specific good reasons for rejecting the opinion of plaintiff's treating physician, Dr. Desai.

In some circumstances, an ALJ's failure to articulate "good reasons" for rejecting a treating physician opinion may be considered "harmless error."  This occurs when (1) "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it," (2) "the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion," or (3) "the Commissioner has met the goal of § 1527(d) – the provision of the

procedural safeguard of reasons – even though she has not complied with the terms of the regulation." *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 547 (6th Cir. 2004).  See also *Cole v. Astrue*, 661 F.3d 931, 940 (6th Cir. 2011).  In the last of these circumstances, the procedural protections at the heart of the rule may be met when the "supportability" of the doctor's opinion, or its consistency with other evidence in the record, is indirectly attacked via an ALJ's analysis of a physician's other opinions or his analysis of the claimant's ailments.  See *Nelson v. Comm'r of Soc. Sec.*, 195 Fed. Appx. 462, 470-471 (6th Cir. 2006); *Hall v. Comm'r of Soc. Sec.,* 148 Fed. Appx. 456, 464 (6th Cir. 2005); *Friend v. Comm'r of Soc. Sec.,* 375 Fed. Appx. 543, 551 (6th Cir. 2010).  "If the ALJ's opinion permits the claimant and a reviewing court a clear understanding of the reasons for the weight given a treating physician's opinion, strict compliance with the rule may sometimes be excused." *Friend,* 375 Fed. Appx. at 551.

Here, the treating physicians had significant, ongoing relationships with plaintiff and their opinions were not so patently deficient that the Commissioner could not rely on them.  Thus, the ALJ's failure to provide sufficiently specific "good reasons" for discounting the opinions of Dr. Singh and Dr. Desai was not harmless error.  Although there may have been good reasons to reject their opinions, the ALJ failed to articulate those reasons with sufficient specificity so as to allow for meaningful review.

## VIII.   Conclusion

For the foregoing reasons, the court should find the decision of the Commissioner was

not supported by substantial evidence.  It is recommended that the final decision of the

Commissioner be VACATED and that the case be REMANDED, pursuant to 42 U.S.C. § 405(g)

sentence four, for further proceedings consistent with this Report and Recommendation.


Dated: June 16, 2016                          *s/ Thomas M. Parker*
                                                          Thomas M. Parker
                                                          United States Magistrate Judge


———————————————————————

### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  See *U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981).  See also *Thomas v. Arn,* 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986).**